ALAMANCE COUNTY HOSPITAL, INC. v. PRICE NEIGHBORS AND BETTE HOWARD, JOINTLY AND SEVERALLY

No. 328PA84

(Filed 7 January 1986)

1. **Parent and Child § 7— non-custodial parent—payment of court-ordered child support—action by a third party for necessaries furnished to child**

    A non-custodial parent's payment of court-ordered child support does not as a matter of law bar a third party from seeking reimbursement from the non-custodial parent, under the common law "Doctrine of Necessaries," for non-emergency medical services furnished to the child.

2. **Parent and Child § 7— recovery for necessaries furnished to child—showing required**

    Because the third party provider's right to recovery against a parent for "necessaries" furnished to the parent's child is based upon the child's right to support, the third party provider must show that the services or goods provided were legal necessaries and that the parent against whom relief is sought has failed or refused to provide them. Any payment a non-custodial parent has made for the support of his or her child would be a factor for the trial judge to consider in deciding whether the parent has in fact met the obligation to support that child.

Justice BILLINGS did not participate in the consideration or decision of this case.

ON discretionary review of a decision of the North Carolina Court of Appeals, 68 N.C. App. 771, 315 S.E. 2d 779 (1984), affirming summary judgment for defendant father entered by *Allen, J.,* at the 12 May 1983 Civil Session of Superior Court, ALAMANCE County. Heard in the Supreme Court 12 March 1985.

*Vernon, Vernon, Wooten, Brown & Andrews, by Wiley P. Wooten and T. Randall Sandifer for plaintiff-appellant.*

*William T. Hughes for defendant-appellee.*

FRYE, Justice.

[1] The sole issue before this Court is whether a non-custodial parent making child support payments pursuant to a judicial decree or order cannot as a matter of law be liable to a third party provider of non-emergency medical services given to that parent's minor child in the absence of a contractual agreement between the non-custodial parent and the third party provider. We hold that the payment of child support does not necessarily bar such a suit.

I.

The defendants in this action, "Price Neighbors"[1] and Bette Howard, were divorced in 1970. Defendant mother was awarded sole custody of the couple's daughter, Kimberly, and defendant father was ordered to pay $26.50 per week "for the support and maintenance of the child of the marriage." He fell into arrears, and in 1976 the amount was raised to $35 until the arrearage was paid. Finally, in 1978, he was ordered to pay $30 per week in a criminal support order. A copy of this order was not included in the record on appeal. All payments were current when plaintiff filed its suit.

Kimberly Neighbors was hospitalized on 4 June 1982 and again on 17 June 1982. Her bill for both stays totaled $4,205.69. "Price Neighbors" is the name that appears in the "responsible

---

1. Defendant father's name is actually Bryce Neighbours, not Price Neighbors as shown in the complaint and as shown in the caption herein.

party" block on the admission form for the first stay; "Bette Howard" appears in that block on the second admission form. Defendant mother signed the hospital admission forms and, later, two promissory notes for the payment of the bill. Nothing in the record indicates that defendant father signed anything, or that he even knew that his daughter had been hospitalized. As of 7 March 1983, the entire bill remained unpaid.

Plaintiff hospital brought this suit 7 March 1983 seeking judgment against both parents jointly and severally. Plaintiff's complaint alleged that the patient was defendants' minor child, that defendants were lawfully married, that the services provided were both reasonable and necessary for the child's health, and that defendant parents had not paid the bill.

On 7 April 1983, defendant father filed an answer wherein he admitted that Kimberly was his child but stated that he was without information about any treatment given to his daughter and denied that he was still married to co-defendant Bette Howard and that he owed plaintiff hospital anything. As affirmative defenses, he claimed that plaintiff had no cause of action against him and that there was a misjoinder of parties. He also filed motions to dismiss for failure to state a claim upon which relief could be granted and to drop his name as a party to the action on the grounds that the hospital had no direct right of action against him because he was paying court-ordered child support to the custodial parent and therefore had no further liability for Kimberly's expenses.

After a hearing on 12 May 1983, the trial judge granted defendant father's motions, and the hospital appealed to the Court of Appeals. The Court of Appeals upheld the trial court's decision on the grounds that a non-custodial parent could not be directly liable to a third party for non-emergency care in the absence of any contract between the two. We now review the correctness of that decision.

Defendant mother has failed to make any appearance at any stage of this action.

II.

The Court of Appeals correctly noted in its opinion that since the trial court considered matters outside the pleadings in grant-

ing defendant father's Rule 12(b)(6) motion, the ruling thereby became one of summary judgment for that defendant. The party moving for summary judgment must establish the lack of any triable issue by showing that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *Caldwell v. Deese*, 288 N.C. 375, 218 S.E. 2d 379 (1975); *Koontz v. City of Winston-Salem*, 280 N.C. 513, 186 S.E. 2d 897, *reh'g denied*, 281 N.C. 516 (1972). As this Court remarked in *Koontz*, "An issue is material if the facts alleged would constitute a legal defense, or would affect the result of the action, or if its resolution would prevent the party against whom it is resolved from prevailing in the action." *Koontz*, 280 N.C. at 518, 186 S.E. 2d at 901. All inferences are to be drawn against the moving party and in favor of the opposing party. *Caldwell v. Deese*, 288 N.C. 375, 218 S.E. 2d 379; *Koontz v. City of Winston-Salem*, 280 N.C. 513, 186 S.E. 2d 897, *reh'g denied*, 281 N.C. 516. As the moving party, defendant father has failed to show that he is entitled to judgment as a matter of law.

It has long been the law in North Carolina that a father has a duty to support his unemancipated minor children. *See Williams v. Williams*, 261 N.C. 48, 134 S.E. 2d 227 (1963); *see also Walker v. Crowder*, 37 N.C. (2 Ire. Eq.) 478, 487 (1843). "Support" in this context includes but is not limited to the provision of necessaries. *Williams v. Williams*, 261 N.C. 48, 134 S.E. 2d 227. Precisely what is meant by the term "necessaries" can change with the times and the family's station in life, *id.*, but medical treatment has traditionally been included and regarded primarily as the father's responsibility. *Flippin v. Jarrell*, 301 N.C. 108, 270 S.E. 2d 482, *reh'g denied*, 301 N.C. 727, 274 S.E. 2d 228 (1980); *Price v. Railroad*, 274 N.C. 32, 161 S.E. 2d 590 (1968); and *Bethea v. Bethea*, 43 N.C. App. 372, 258 S.E. 2d 796, *cert. denied*, 299 N.C. 119, 261 S.E. 2d 922 (1979); *see also Bitting v. Goss*, 203 N.C. 424, 166 S.E. 302 (1932). As plaintiff hospital cogently argued in its brief, "medical treatment" has never been limited to emergency care only. The father's duty of support is not a debt but an obligation imposed by law which arises from his status as father. A father cannot contract away or transfer to another his responsibility to support his children. *Ritchie v. White*, 225 N.C. 450, 35 S.E. 2d 414 (1945); *see also Wells v. Wells*, 227 N.C. 614, 44 S.E. 2d 31 (1947). The obligation survives divorce and continues even

though custody of the children is awarded to the mother. *Becker v. Becker*, 273 N.C. 65, 159 S.E. 2d 569 (1968); *Story v. Story*, 221 N.C. 114, 19 S.E. 2d 136 (1942).

The cases cited above were decided before the 1981 amendment to N.C.G.S. § 50-13.4(b). Prior to that amendment, a father's responsibility for support of his children was primary and a mother's was only secondary. *In re Register*, 303 N.C. 149, 277 S.E. 2d 356 (1981). The mother was not required to furnish any support at all unless the father was unable to provide the entire amount needed or had died. *Id.* The 1981 amendment made both parents primarily liable. N.C.G.S. § 50-13.4(b) now reads:

> (b) In the absence of pleading and proof that the circumstances otherwise warrant, the father and mother shall be primarily liable for the support of a minor child, and any other person, agency, organization or institution standing in loco parentis shall be secondarily liable for such support. Such other circumstances may include, but shall not be limited to, the relative ability of all the above-mentioned parties to provide support or the inability of one or more of them to provide support, and the needs and estate of the child. The judge may enter an order requiring any one or more of the above-mentioned parties to provide for the support of the child as may be appropriate in the particular case, and if appropriate the court may authorize the application of any separate estate of the child to his support. However, the judge may not order support to be paid by a person who is not the child's parent or an agency, organization or institution standing in loco parentis absent evidence and a finding that such person, agency, organization or institution has voluntarily assumed the obligation of support in writing. The preceding sentence shall not be construed to prevent any court from ordering the support of a child by an agency of the State or county which agency may be responsible under law for such support.

N.C.G.S. § 50-13.4(b) (1985). This statute as amended does not diminish a father's responsibilities. Rather, it enlarges a mother's responsibilities by making both parents primarily liable for the support of their children. *Plott v. Plott*, 313 N.C. 63, 326 S.E. 2d 863 (1985).

Although the normal vehicle today for enforcing this obligation is undoubtedly the payment of court-ordered support pursuant to statute, *see, e.g.*, N.C.G.S. § 50-13.4 (1985), the common law provided another through the so-called "Doctrine of Necessaries." As Professor Clark described the process in his *Law of Domestic Relations*:

> At common law the customary method for enforcing the husband's duty to support his family was for the wife or child to buy what they needed and charge it to the husband . . . . [T]he husband was thereby made responsible directly to the merchant who supplied goods to the wife or child.

H. Clark, *Law of Domestic Relations*, § 6.3 at 191 (1968) (footnote omitted). The burden of proof was upon the supplier to show first, that the goods supplied were "necessaries," and second, that the husband or father had failed or refused to provide them. Liability under this theory was quasi-contractual in nature. H. Clark, *Law of Domestic Relations*, § 6.3.

North Carolina accepts this process for enforcing a parent's obligation to support minor children. *See* 3 R. Lee, *North Carolina Family Law*, § 230 (4th ed. 1985). However, few cases involving it exist in this state. *See, e.g., Howell v. Solomon*, 167 N.C. 588, 83 S.E. 609 (1914) (grandmother sued for reimbursement for money spent supporting defendant's minor children; recovery was denied because defendant was at all times willing and ready to provide a home for his children, and grandmother wrongfully kept them away from him); and *Hunnycutt & Co. v. Thompson*, 159 N.C. 29, 74 S.E. 628 (1912) (father held liable for son's funeral expenses where father had wrongfully driven son from his home). *See also Bitting v. Goss*, 203 N.C. 424, 166 S.E. 302 (although allowing the third party provider to sue a child, the court noted that suit against the father who had failed to pay for emergency treatment rendered to his son would also have been appropriate). Most cases dealing with a parent's duty to support minor children do so either in the context of court-ordered child support, *see, e.g., Plott v. Plott*, 313 N.C. 63, 326 S.E. 2d 863, or the question of the proper party to sue for these expenses in tort actions, *see, e.g., Flippin v. Jarrell*, 301 N.C. 108, 270 S.E. 2d 482, *reh'g denied*, 301 N.C. 727, 274 S.E. 2d 228.

The hospital in this action appears to be claiming restitution from defendant father under the common law doctrine previously described.[2] The hospital does not allege and has produced no evidence of any contract with defendant father. Any contract that existed was apparently made with defendant mother, although the evidence in the record is not clear on this point.[3] Plaintiff's complaint alleged that the services it provided were necessary and reasonable and that defendant parents have refused to pay them.

Defendant father's defense appears to be one of first impression before this Court. While not disputing his responsibility to support his daughter, defendant father contends that his liability is limited to the amount set forth in his support orders. In defense of this contention, he notes that the original support order does not require him to pay any additional amounts for Kimberly's medical expenses but names a single sum for "support and maintenance." He argues that his contribution to Kimberly's medical expenses is therefore included in his weekly payment.

Other jurisdictions that have considered this defense are sharply divided in their results. Several (Arkansas, California, Maine, Massachusetts, Nebraska, New York, Ohio, Oregon) apparently hold that a judicial decree or order is the absolute limit of a non-custodial parent's liability for support of a minor child except as the order or decree itself may be subsequently modified. *See* Annot., 7 A.L.R. 2d 481 (1949 & Supp. 1985). Others have allowed recovery above the amount fixed by the decree or order either by the custodial parent or by a third party provider of necessary services (Arizona, Iowa, Missouri, Texas (third party), Colorado, Kentucky, Mississippi (custodial parent), and Tennessee (both)). *Id.* At least three of these jurisdictions decided this question in part on the grounds that the minor children had not been parties to the divorce action and that therefore their rights as

---

2. While plaintiff hospital cites in its brief considerable authority for the proposition that a father has an obligation to provide necessaries and not simply emergency care for a minor child, the hospital fails to cite any authority to support its own right to collect from the father in the absence of a contract.

3. While defendant mother's name was signed to the promissory notes, she seems also to have listed defendant father as the responsible party for her daughter's first hospital stay and promised to get him to co-sign the note.

against their parents were not affected. *See Barrett v. Barrett*, 44 Ariz. 509, 39 P. 2d 621 (1934); *Graham v. Graham*, 38 Colo. 453, 88 P. 852 (1906); and *Rose Funeral Home v. Julian*, 176 Tenn. 534, 144 S.W. 2d 755 (1940). *See also Thompson v. Perr*, 238 S.W. 2d 22 (Mo. Ct. App. 1951) (rights of third party provider of dental services not foreclosed by parents' divorce action).

We find the view expressed long ago by the Arizona court in *Barrett* to be the better one:

> The provisions in the decree of divorce . . . are binding, as between the father and mother, until by a direct proceeding modified, but they do not extend to the minor children. The court under the statutes retains jurisdiction to amend, change, or alter any provision of the decree respecting the care, custody, or maintenance of the children of the parties, as the circumstances of the parents and the welfare of the children may require . . . . If this action were by the mother, it could well be said that her remedy would be to apply for a modification of the decree . . . . But neither the statute nor the decree thereunder is the full measure of the duty of the parent to his minor children. If it were, the children's right to support could not be enforced for lack of a remedy, provided the parent failed to act.

44 Ariz. at 515-6, 39 P. 2d at 623 (citation omitted). In North Carolina, the provisions of Chapter 50 for obtaining support from a non-custodial parent and the criminal sanctions of Chapter 14 provide the basic statutory remedies against the failure or refusal of a child's parents to support the child. The common law provided a different remedy by giving a third party provider of necessaries a right of action against a parent who failed or refused to provide. We do not believe that the statutory remedies were intended to be exclusive; therefore, the common law remedy remains available as a vehicle for enforcing the obligation of a parent to support a minor child in addition to the remedies provided by statute. Because the child's right to support continues unimpaired despite the divorce of his or her parents, *Story v. Story*, 221 N.C. 114, 19 S.E. 2d 136; *Sanders v. Sanders*, 167 N.C. 319, 83 S.E. 490 (1914), the right of the third party provider of goods or services to claim against the non-custodial parent also continues, unimpaired by contracts or judicial decrees or orders affecting the relations between the parents.

[2]    Therefore, we cannot agree that, as a matter of law, the payment of court-ordered child support bars a third party from seeking reimbursement directly from a non-custodial parent for "necessaries" provided to that parent's minor child. Because the third party provider's right to recover against the parent is based upon the child's right to support, the third party provider must still show that the services or goods provided were legal necessaries and that the parent against whom relief is sought has failed or refused to provide them. In this context, any payment a non-custodial parent has made for the support of his or her child would be a factor for the trial judge to consider in deciding whether the parent has in fact met the obligation to support that child. *See Morton F. Plant Hosp. Ass'n v. McDaniel*, 425 So. 2d 1213 (Fla. Dist. Ct. App. 1983). The bare fact that defendant father in this case has made his court-ordered support payments does not, by itself, conclusively prove that he has met his full obligation to his daughter, and therefore summary judgment was improper. It must also follow that the trial court erred by allowing the motion to drop the father as a party defendant.

We note that the question of responsibility of Kimberly's parents as between themselves for the cost of her hospitalization is not before this Court, and we do not address it.

The decision of the Court of Appeals is reversed, and the case is remanded to that court for remand to Superior Court, Alamance County, for further proceedings not inconsistent with this opinion.

Reversed and remanded.

Justice BILLINGS did not participate in the consideration or decision of this case.